UNITED STATES DISTRICT COURT
DISTRICT OF MASSAUCHESETTS
- - - - - - - - - - - - - - - - -
UNITED STATES OF AMERICA,           :

    - against -                    :       Case No. 00-10077(W.G.Y)

                                            MEMORANDUM OF LAW IN SUPPORT
DAVID MOLLOY,                       :   OF PETITION PURSUANT TO
    Petitioner,
                                     :      28 U.S.C. § 2255.

- - - - - - - - - - - - - - - - -

    David Molloy, the petitioner in this criminal proceeding, submits this Memorandum of Law in support of the instant application for relief, made pursuant to 28 U.S.C. § 2255, to set aside the sentence imposed by this Honorable Court, the United States District Court, District of Massachusetts (Honorable Willima G. Young, USDJ), on December 20, 2000.

## STATEMENT OF THE CASE

    On March 8, 2000, a federal grand jury returned an indictment charging the petitioner with one count of possession of unregistered devices, in violation of 26 U.S.C. § 5861(d), and one count of transfer of unregistered destructive devices, 26 U.S.C. § 5861(e). The devices at issue were two live, high-explosive M-67 military fragmentation hand grenades that were stolen from a United States military facility and delivered to Jason Zawadzki, the defendant in a companion case.

    On November 13, 2000, this Court accepted the petitioner's plea of guilty as to both counts.

---

[1] This synposis was garnered from the request for Writ of Certiorari, addressed to the United States Supreme Court, and which was subsequently denied, in United States v. Malloy, ___ ___ (2003).

On December 20, 2000, at sentencing, the government urged this Court, that application of U.S.S.G. § 2K2.1(b)(5) applied, and this Court agreed and sentenced the petitioner to 72 months of imprisonment as to each count, to be run concurrently with each other. On March 29, 2001, this court permitted the petitioner leave to file a late notice of appeal.

The United States Court of Appeals for the First Circuit heard oral arguments on November 7, 2002, and affirmed this court's decision on March 31, 2003. United States v. Molloy, No. 01-1129, slip op. (1st Cir. March 31, 2003).

In September, 2004, the Court of Appeals for the First Circuit, denied relief as to petitioner's motion for rehearing in banc, in relation to the Supreme Court's recent ruling in Blakely v. Washington, 124 S.Ct. 2531.

## PRESENT APPLICATION

1. At sentencing, the government urged this Court to apply the application of U.S.S.G. § 2K2.1(b)(5) (relationship to another felony offense), and offered the following facts: In December 1999, Zawadzki arranged to obtain two M-67 hand grenades from David Joseph, a convicted felon who had earlier been deported to Canada.

2. Joseph instructed a girlfriend to deliver the hand grenades from David Joseph, who was a convicted felon, who had earlier been deported to Canada. Joseph had instructed his girlfriend to deliver the hand grenades to Zawadzki, who was, at that time, confined to his home and required to wear an electronic monitoring device under the terms of his sentence for a prior state felony conviction.

3. As part of his sentence, Zawadski was also required to attend Alcoholics Anonymous meetings at the Essex County House of Corrections Farm Program. At one such meeting, Zawadski offered to sell the hand grenades to another convicted felon, David Santiago (A.K.A. "Tucky"), who the petitioner knew to be a member of a street gang in Lawrence, Massachusetts, called the Outlaws. After Tucky declined to purchase the hand grenades, Zawadski contacted the petitioner to request his assistance in finding a buyer.

4. On January 23, 2000, the petitioner approached "Slot", who was at that time, acting as a cooperating witness for the government, and offered to sell him the two hand grenades. Slot left the meeting and telephoned Frank Hughes, a Massachusetts State Trooper, who instructed Slot to make the purchase the next day.

5. On January 24, 2000, Slot contacted the petitioner, and in a telephone conversation that was recorded by law enforcement agents, elicited from the petitioner, that the hand grenades belonged to a third party and that the petitioner would have to retrieve them prior to the sale. A purchase price was agreed upon, once Slot verified the authenticity of the grenades.

6. Subsequently, Slot, while wearing a body wire, drove to meet the petitioner in order to take possession of the grenades. At that meeting, Slot described the buyer to the petitioner, as "(Unintelligible) fuck (Unintelligible) crazy shit (Unintelligible)". In reply, the petitioner stated: "And you're

sure that the guy knows that he's (sic) doing, right?" Slot replied: "He's mother fucker's an ex marine."

7. On January 28, 2000, following the sale of the grenades, Slot wore a body wire and again met with the petitioner. The following conversation took place:

> Molloy: You could probably blow up somebody's house with those things.
>
> Molloy: Run up to somebody's house and throw the thing in the window there, fucking done.
>
> Slot: Any who was the guy gonna sell them to if I didn't buy 'em?
>
> Molloy: Tucky. I told him don't sell it to him, I hate that fucking kid.
>
> Slot: Fuck no man what is he what is he now?
>
> Molloy: He's an outlaw now.
>
> Molloy: I don't know that kid.

8. The petitioner offered at sentencing, that he was unaware that Slot was a member of a violent street gang, that he would not have sold grenades to gang members, that he assisted in the sale of the grenades to a person whom he believed was a collector, and that his post-sale conduct was not relevant as he had no control over the grenades once they were delivered.

9. This Court, at sentencing, imposed over the petitioner's objections, the four point enhancement, pursuant to U.S.S.G. § 2K2.1(b)(5). The finding by the Court consisted of the transcripts of wiretap and body wire recordings, the pre-sentence report, and representations of counsels'. Specifically, this Court held:

> I am not satisfied by a <u>fair preponderance of the evidence</u> that Mr. Molloy knew that this, that the, this business about weapons being sold to some other street gang. Rather, I base the finding on this fictitious character that the undercover informant made up.
>
> It just strains credulity in these circumstances, where these grenades are being passed about among street gangs, that Mr. Molloy in good faith thought some sort of out-of-state collector was going to get the grenades. The tenor of the transcripts and all the circumstances convince the court by a <u>fair preponderance</u> of the evidence that Mr. Molloy thought these grenades were going to be used in a felony. (Emphasis Added).

10. This Court sentenced the petitioner to serve 72 months of imprisonment as to each count, to be served concurrent to each other. On March 29, 2001, this Court granted the petitioner leave to file a late notice of appeal.

11. The petitioner presented two points for argument: (1) that the district court clearly erred in imposing a four level enhancement pursuant to 2K2.1(b)(5); and (2) imposing the four level enhancement resulted in plain error as the petitioner's possession or transfer of the grenades was not causally or logically related to another felony offense.

12. On March 11, 2003, the Court of Appeals affirmed the imposition of the district court's application of the guidelines. <u>United States</u> v. <u>David Molloy</u>, No. 01-1129, slip op. (1st Cir. 2003). ("[T]o impose the four level enhancement for Molloy, the court was required to find, by a preponderance of the evidence, that the recorded conversations revealed that the co=defendant's

had knowledge, intent, or reason to believe, that the hand grenades sold to Slot would be used or possessed in connection with another felony offense.") The Court concluded that the requirements of section 2K2.1(b)(5) were satisfied as to Molloy, based upon the tenor of the transcripts and all circumstances, convince the court by a fair preponderance of the evidence that Molloy thought these grenades were going to be used in a felony.

### A. Instant Assertion

THE UNITED STATES SUPREME COURT'S HOLDING IN BLAKELY V. WASHINGTON, 124 S.Ct. 2531 (2004), THAT SIXTH AMENDMENT RIGHT TO JURY TRIAL, FORECLOSED JUDICIAL DETERMINATION, UNDER PREPONDERANCE OF EVIDENCE STANDARD, OF FACTS THAT ENHANCED SENTENCE BEYOND RELEVANT STATUTORY MINIMUM, WAS RENDERED THE INSTANT SENTENCE ILLEGAL. U.S.C.A. Const. Amend. 6, REQUIRING VACATUR OF IMPOSED SENTENCE.

13. In light of the Supreme Court's holding in Blakely v. Washington, 124 S.Ct. 2531 (2004), it is asserted that this Court's imposition of each enhancement as articulated within the Revised December 13, 2000 pre-sentence report, at ¶ 28(a-c), based solely upon a judicial finding by the preponderance of the evidence standard, is incorrect, illegal, and violates the petitioner's 6th Amendment rights as articulated within Blakely.

14. The petitioner did not enter into a specific written plea agreement, and as such, pursuant to Rule 5 of the Rules governing section 2255 applications, the government is compelled to furnish this Court with the relevant plea and sentencing transcripts for the adjudication of this petition.

---

2
  Excerpts from the Revised pre-sentence report are detailed herein and cited as to the appropriate paragraph numbers (¶). Pursuant to Rule 5, of the Rules governing section 2255 applications, the government is required to furnish the Court with the relevant material necessary for this applications' adjudication.

15. According to the Revised pre-sentence report (R.PSR) (12/13/00), at ¶ 27, Base Offense Level. Per USSG § 2K2.1(a)(4)(B) the defendant is a prohibited person and the base offense level is 20.

16. However, pursuant to the R.PSR, at ¶ 28(a), as the offense involved a destructive device, a two level enhancement is added per USSG § 2K2.1(b)(3).

17. In addition, according to the R.PSR, at ¶ 28(b), since the grenades were stolen, a two level enhancement is applied per USSG § 2K2.1(b)(4).

18. Finally, according to the R.PSR, at ¶ 28(c), pursuant to USSG § 2K2.1(b)(5), there is sufficient evidence to suggest that the defendant had knowledge, intent, or reason to believe that the grenades would be used in or possessed in connection with another felony offense. Accordingly, a four level enhancement is applied.

19. The original pre-sentence report, dated 11/9/00, merely indicated that the petitioner's base offense level would be enhanced, by a total of four points: 2 points each as articulated within ¶ 16, and ¶ 17 herein.

20. On December 13, 2000, the petitioner appeared before this Honorable Court, for a change of plea hearing. At this proceeding, the petitioner admitted to sufficient facts to support only the Offense Characteristis within the R.PSR at ¶ 27, denotating the Base Offense Level at 20; however the record

clearly dehors any indication of the petitioner's articulation as to any enhancement.

B. <u>The majority of the Circuits</u> and district courts, have found that <u>Blakely</u> applies to the United States Federal Sentencing Guidelines. See, e.g., <u>United States</u> v. <u>Montgomery</u>, ___F.3d ___ 2004 WL 1562904 (6th Cir. July 14, 2004); <u>United States</u> v. <u>Booker</u>, 375 F.3d 508, 2004 WL 1535858 (7th Cir. 2004); <u>United States</u> v. <u>Landgarten</u>, 325 F.Supp.2d 234, 2004 WL 1576516 (E.D.N.Y. 2004); <u>United States</u> v. <u>Einstman</u>, 325 F.Supp.2d 373 (S.D.N.Y. 2004); <u>United States</u> v. <u>Toro</u>, 2004 WL 1575325 (D.Conn. July 8, 2004); <u>United States</u> v. <u>Montgomery</u>, 324 F.Supp.2d 1266, 2004 WL 1535646 (D.Utah 2004); <u>United States</u> v. <u>Croxford</u>, 324 F.Supp.2d 1230 (D.Utah 2004) ("Croxford I"); <u>United States</u> v. <u>Lamoreaux</u>, 2004 WL 1557283 (D.Mo. July 7, 2004); <u>United States</u> v. <u>Medas</u>, 323 F.Supp.2d 436 (E.D.N.Y. 2004); <u>United States</u> v. <u>Shamblin</u>, 323 F.Supp.2d 757 (S.D.W.Va. 2004); <u>United States</u> v. <u>Gonzalez</u>, 2004 WL 1444872 (S.D.N.Y. 2004); <u>United States</u> v. <u>Fan Fan</u>, 03-47-P-H.

21. In addition, in must be articulated that the petitioner has reviewed <u>this</u> Court's decision in <u>United States</u> v. <u>Green</u>, ___F.Supp.2d ___, 2004 WL 1381101 (D.Mass. 2004), the sum of which can be found in this passage: "the Sixth Amendment guarantees of trial by jury has been eroded as never before in the history of our nation, while the institutional judiciary complacently slips into forms of expression and modes of thought that unconsciously reinforce the Department agenda in a powerful Orwellian way." <u>Id.</u> at ___, 2004 WL 1381101, at *3.

C. Supreme Court Precedent Does not Address the Sixth Amendment issues of Blakely. To be sure, the Guidelines have previously withstood significant Supreme Court scrutiny and have come out on the winning side. See Mistretta v. United States, 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989); Stinson v. United States, 508 U.S. 36, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993); Witte v. United States, 515 U.S. 389, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995); and United States v. Watt, 519 U.S. 148, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997). The Guidelines have not, however, faced a Sixth Amendment right to jury trial challenge such as the one mounted in Blakely against the Washington State scheme.

22. On October 8, 2004, the Supreme Court heard oral arguments in two consolodated cases, Booker, and Fan Fan, supra. Although the Court has not yet issued it's written opinion, in the October 11, 2004 Criminal Law Reporter, at pg. 2021, it is apparent that the Court will not reverse it's trend as to Blakely, and the implication of the Sixth Amendment, in relation to the Federal Sentencing Guidelines.

23. It is urged that this Court follow the reasoning in Green, and United States v. King, 328 F.Supp.2d 1276 (M.D.Fla. 2004), at 1281, where the court held, "[t]hat for constitutional purposes, the Guidelines are indistinguishable from the Washington state sentencing scheme at issue in Blakely." Justice Scalia wrote, "the statutory maximum for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. In other words, the relevant 'statutory maximum' is not the maximum

sentence a judge may impose after finding additional facts, but the maximum he may impose <u>without</u> finding additional facts. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts 'which the law makes essential to the punishment', and the judge exceeds his proper authority. ___ U.S. ___, 124 S.Ct. at 2537 (citations omitted) (emphasis added).

D. <u>Blakely</u> or <u>Apprendi</u> properly construed, would have affected Molloy's sentence. In <u>Blakely</u>, the Supreme Court held that the Washington state sentencing procedure violated the petitioner's Sixth Amendment right to trial by jury under <u>Apprendi</u> and its' progeny. <u>Id.</u> at 2538, see 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). In <u>Apprendi</u>, the Court determined that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt."

24. The Court reasoned that the Due Process Clause and the Sixth Amendment right to a jury trial "indisputedly entitle a criminal defendant to a jury determination that [he] is guilty of every element of the crime with which he is charged beyond a reasonable doubt."

25. In essence, the petitioner contends that a proper interpretation of <u>Apprendi</u>, as clarified by <u>Blakely</u>, establishes that his sentence violates his Sixth Amendment right to a jury trial, and that the court's imposition of this sentence constitutes clear error.

26. In this case, the petitioner asserts that this Court did not have jurisdiction to impose a sentence, based upon facts, that were neither admitted by the petitioner, or found by a jury beyond a reasonable doubt. This Court's sentence should have reflected the imposition of a term that correlated to a Base Offense Level of 20, and Criminal History Category II. Any sentence above that range is Unconstitutional. It is therefore respectfully urged that this Court vacate, and or set aside the sentence imposed.

Respectfully,

David Molloy
Fed.Reg.No.22993-038
FCI Raybrook
P.O. Box 900
Raybrook, NY
12977

To: AUSA
    John McNeil, Esquire

October 20, 2004